**Elena M. PAUL, Appellant,**

**The George Washington University, Appellant,**

v.

**Charles J. BIER, Appellee.**

**Nos. 96–CV–1495, 97–CV–50.**

District of Columbia Court of Appeals.

Argued Oct. 15, 1998.
Decided Aug. 24, 2000.

Gary A. Godard, with whom Mark R. Lightfoot and Patricia C. Karppi, West Fairfax, VA, were on the brief, for appellee.

Before SCHWELB, RUIZ and REID, Associate Judges.

RUIZ, Associate Judge:

In these consolidated appeals, we consider again the proper application of *pro tanto* and *pro rata* credits. Appellants Elena M. Paul and The George Washington University (GWU) ask us to review two post-trial orders made after a jury verdict awarding medical malpractice damages to Paul in a suit against Dr. Charles J. Bier, her private physician. According to Paul, the trial court erred in concluding that Dr. Bier was entitled to a *pro tanto* rather than a *pro rata* credit against the verdict as a result of Paul's settlement with GWU during trial. GWU asserts that the trial court abused its discretion in denying its post-verdict motion to assert a cross-claim for contribution against Dr. Bier. Because joint liability was not established between the alleged joint tortfeasors, Dr. Bier and GWU, we agree with the trial court's decision to apply a *pro tanto* credit to the jury's verdict. As Paul had already been compensated by the settlement with GWU in the full amount of the jury verdict, Dr. Bier had no outstanding obligation to pay Paul. We also hold that the trial court did not abuse its discretion in denying GWU's motion to file a cross-claim for contribution against Dr. Bier on the ground that the untimeliness of the motion was prejudicial to Dr. Bier, the nonsettling party.

I.

In 1994, Elena Paul sued Dr. Charles Bier and GWU, the employer of a second physician, Dr. Druy, to recover damages for medical malpractice. During trial, GWU settled with Paul in the amount of $2,000,000 and Paul's case against GWU

Patrick M. Regan, with whom Jonathan E. Halperin and Victor E. Long were on the brief, Washington, DC, for appellant Elena M. Paul.

Steven A. Steinbach, with whom Craig D. Singer, Washington, DC, was on the brief, for appellant The George Washington University.

was dismissed with prejudice[1] on July 18, 1996.[2] GWU denied liability in the settlement agreement.[3] In the event GWU was sued for contribution by Dr. Bier, however, the agreement required Paul to stipulate that GWU and its employees were "active tortfeasors ... for the purpose of determining the rights of the remaining nonsettling defendant [Dr. Bier] to a complete or partial set-off." The settlement agreement also required Paul to indemnify GWU for any amount it may be liable in contribution to Dr. Bier.

The trial continued against Dr. Bier and, on July 29, 1996, the jury returned a $2,000,000 verdict in favor of Paul. Dr. Bier did not file a cross-claim against either GWU or Dr. Druy for contribution or indemnification, but, instead, immediately after the jury's verdict, made a motion for the application of a *pro tanto* credit against the verdict of $2,000,000, the amount that Paul had received in settlement from GWU. Paul opposed the motion arguing for application of a *pro rata* credit in the amount of $1,000,000, to reflect what Paul claimed was GWU's one-half share, as joint tortfeasor with Dr. Bier, of the jury verdict. On September 16, 1996 the trial court ruled in favor of Dr. Bier, and applied a *pro tanto* credit against the verdict. As a result, appellant Paul's recovery was limited to the $2,000,000 settlement amount already paid by GWU, and Dr. Bier did not have to pay anything. On October 24, 1996, settling defendant GWU sought leave of the court to file a cross-claim for contribution against Dr. Bier,

which the trial court denied as untimely. Paul appeals from the order applying a *pro tanto* credit.[4] GWU appeals from the trial court's refusal to allow the cross-claim for contribution.

## II.

### A. Paul's Appeal (96–CV–1495): Pro Tanto v. Pro Rata Credit.

■ A *pro tanto* credit is based on the actual settlement amount, "dollar-for-dollar," while a *pro rata* credit is based on proportionate shares of liability among joint tortfeasors. See *Berg v. Footer*, 673 A.2d 1244, 1248–49 (D.C.1996). Appellant Paul opposes the application of a *pro tanto* credit of the settlement amount against the verdict on the ground that it results in the unjust enrichment of a nonsettling defendant, such as Dr. Bier, when, as here, the amount of the verdict equals the amount of the settlement the plaintiff reached with another defendant. In addition, Paul asserts that a *pro rata* credit is appropriate in this case because only one of her two liability claims was submitted to the jury, and therefore the jury verdict represented only one-half of the damages arising from these claims. The question of "[h]ow to credit the judgment entered upon a jury verdict against a nonsettling defendant with the proceeds a settling defendant paid to the plaintiff" is purely a question of law, which this court reviews *de novo*. *Berg*, 673 A.2d at 1247 (citing *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1019 (5th Cir.1994)). We stated in *Berg* that a nonsettling defendant is

---

1. Prior to settling with GWU, Paul dismissed her claim against Dr. Druy, the GWU physician.

2. The settlement agreement between Paul and GWU is dated one week later, July 26, 1996.

3. The settlement agreement provides in pertinent part:

   Nothing contained in this paragraph of the Agreement constitutes an acknowledgment by George Washington, its agents, servants or employees, that they are or should be liable to the plaintiff or the nonsettling defendant for the claims and causes of action

asserted in the lawsuit. George Washington, its agents, servants and employees maintain that they are not liable on any of the claims and causes of action asserted therein.

4. Paul had also moved to seal the settlement agreement. The trial court denied the motion to seal as Paul sought to attach the settlement agreement to her opposition to Dr. Bier's motion for a *pro tanto* credit. Paul does not appeal from the court's denial of her motion to seal.

entitled to a *pro tanto* credit for the amount paid by settling defendants who are not joint tortfeasors, *see* 673 A.2d at 1245, and to a *pro rata* credit based on the nonsettling defendant's right of contribution against a settling joint tortfeasor, *see id.* at 1248.

Paul's complaint alleged that separate acts of negligence by Dr. Druy, a GWU employee, and Dr. Bier, her private physician, combined to proximately cause injury, namely post-phlebitic syndrome, as a result of vascular damage to her left leg. After presenting her case to the jury against all the defendants, Paul settled her negligence claim against GWU, and its employee, Dr. Druy, for $2,000,000, and they were dismissed as defendants in the case. The jury then found in favor of Paul against Dr. Bier after finding that Dr. Bier's actions were a proximate cause of Paul's injuries, and awarded her $2,000,000 as compensation for her injuries. Paul's claim that the jury verdict compensated for damages solely attributable to Dr. Bier, *i.e.*, that it was not intended as full compensation for her injuries, is not borne out by the record.[5] The jury valued all of

Paul's injuries at $2,000,000 and assessed those damages as attributable to Dr. Bier's negligence. Paul received $2,000,000 as a result of the settlement agreement with GWU. Thus, Paul was satisfied by the settlement to the full extent of the damages found by the jury.

Notwithstanding that she has received compensation to the full extent of the jury's $2,000,000 verdict, Paul contends that she is entitled to the benefit of a *pro rata* credit under our *Berg* opinion. We recognize that Paul would have benefitted if the trial court had applied a *pro rata* rather than a *pro tanto* credit, in that Dr. Bier would have been required to pay Paul an additional $1,000,000,[6] reflecting his proportionate share of liability. In *Berg*, this court applied a *pro rata* credit, which in the circumstances of that case resulted in total compensation to the plaintiff in excess of the jury's verdict,[7] noting that "the law contains no rigid rule against overcompensation." *Id.* at 1256 & n. 19 (quoting *McDermott, Inc. v. AmClyde and River Don Castings Ltd.*, 511 U.S. 202, 219, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994)). This holding, however, was not

---

**5.** According to the trial court,

[t]he jury was not asked to apportion the injury caused by defendant Bier's negligence from the injury caused by any negligence of the settling defendants [*i.e.*, GWU and Dr. Druy], and the expert testimony would not have permitted the jury to make such an apportionment had it been asked to do so. Based on the evidence and the court's instructions, the jury found that defendant Bier's negligence was a proximate cause of [Paul's] injuries, and that $2,000,000 would fairly and reasonably compensate her for those injuries.

On appeal, Paul contends, without record reference, that the jury instructions on negligence and damages "corresponded directly to the single claim of damages attributable to defendant Bier only." We see no evidence in the record contrary to the trial court's determination that Paul did not request that the jury award only those damages caused solely by Dr. Bier, and Paul did not designate any of the transcript for the record on appeal. Indeed, by arguing that the trial court should have applied a *pro rata* credit, Paul impliedly asserts that Dr. Bier and GWU were jointly

liable for a single injury. *See District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 338 (D.C.1998) (en banc); *Berg*, 673 A.2d at 1248 (noting that a party who is sole cause of injury is not entitled to contribution).

**6.** This $1,000,000 figure assumes that GWU, and its employee, Dr. Druy, constitute one tortfeasor, and that Dr. Bier, as the second tortfeasor, would be responsible for half of the $2,000,000 jury verdict under a *pro rata* credit scheme.

**7.** In *Berg*, after the hospital and laboratory settled for $800,000 and $150,000, respectively, the jury returned a verdict against the nonsettling physician in the amount of $1,406,071. The nonsettling physician obtained a *pro tanto* credit of $150,000 with respect to the laboratory, which had not been determined to be a joint tortfeasor, and a *pro rata* credit of one-half of the remainder of the jury verdict (after deduction of the $150,000 *pro tanto* credit) with respect to the hospital, which was a joint tortfeasor. As a result, the plaintiff received $1,578,035.50, more than the $1,406,071 awarded by the jury.

based on the rationale that the plaintiff was entitled to compensation in excess of the jury's verdict, but rather that, in spite of that consequence, "consistency with established precedent applicable to settlements with joint tortfeasors weighs in favor of" applying a *pro rata* credit to the jury verdict "even though the nonsettling defendant's *pro rata* contribution to the amount of the jury verdict, when added to the amounts recovered in settlement, will result in a plaintiff's recovery that exceeds the verdict." *Berg,* 673 A.2d at 1257. The court expressly declined to make application of a *pro rata* credit depend on the relative settlement and verdict amounts in an individual case, noting that "[m]aking particular credit rules contingent upon the relative amounts of the settlement and the jury's verdict ... would only increase uncertainty and make it even more difficult for litigants to negotiate settlements." *Id. But see Rose v. Associated Anesthesiologists,* 163 U.S.App.D.C. 246, 250, 501 F.2d 806, 810 (1974) (limiting the amount of *pro tanto* credit "so as to assure that the defendant held liable in the litigation does not pay less than his equitable [*pro rata*] share").[8]

In short, the injured patient in *Berg* was no more than an incidental beneficiary of this court's decision to adhere to the rule that when a settling defendant is a joint tortfeasor, the nonsettling defendant is entitled to a *pro rata* credit against the jury's verdict. *See Berg,* 673 A.2d at 1257 (citing *Martello v. Hawley,* 112 U.S.App.D.C. 129, 132, 300 F.2d 721, 724 (1962)). Although application of a *pro tanto* credit means that the plaintiff will not receive a windfall benefit, the court's decision to apply a *pro tanto* credit in no way reduces that to which the plaintiff is entitled, compensation in the amount awarded by the jury. Whether Paul will receive that windfall depends exclusively on whether a *pro rata* credit should have been applied in order to vindicate the right of contribution between the settling and nonsettling defendants as joint tortfeasors. We now turn to that issue.[9]

■ A threshold obstacle to Paul's claim that a *pro rata* credit should have been applied to the verdict rendered against Dr. Bier is the absence of either a judicial determination or a stipulation, *see Berg,* 673 A.2d at 1251 & n. 13; *Lamphier v. Washington Hosp. Ctr.,* 524 A.2d 729, 733 & n. 5 (D.C.1987), that GWU is a joint tortfeasor with Dr. Bier. Because GWU settled mid-trial and was dismissed from the case, and it did not raise the issue of contribution until after the jury's verdict, see *infra,* there was no court adjudication that GWU and Dr. Bier were joint tortfeasors. GWU's post-trial unilateral acknowledgment of liability in its cross-claim for

---

8. The $2,000,000 settlement between Paul and GWU reflected a strategic choice by Paul, who considered "the uncertainty of recovery and of the need for a settlement to help strengthen [her] litigation prospects against a nonsettler." *Berg,* 673 A.2d at 1256 (citing *McDermott,* 511 U.S. at 221, 114 S.Ct. 1461). Had the jury returned a verdict against Dr. Bier of less than the settlement amount, Paul would have gained "good fortune in striking a favorable bargain with" GWU. *Id.* (quoting *McDermott,* 511 U.S. at 220, 114 S.Ct. 1461).

9. It is worth noting that had the jury verdict substantially exceeded the settlement amount, and if GWU had been determined to be a joint tortfeasor, Paul could have received less than the full amount of the verdict. This is because Dr. Bier, the nonsettling tortfeasor, would have obtained a *pro rata* credit against the verdict in an amount equal to the sum to which he would have been entitled in contribution, *i.e.,* half of the verdict, instead of recovering directly from GWU. *See Berg,* 673 A.2d at 1250 n. 9. For example, had the jury returned a verdict of $5,000,000, and assuming a *pro rata* credit of one-half were appropriate, Dr. Bier would have received a $2,500,000 credit against the verdict. Paul would have received a total of $4,500,000: $2,500,000 from Dr. Bier and the $2,000,000 settlement from GWU, which by virtue of its decision to settle with Paul would have limited its liability in the suit. *See District of Columbia v. Shannon,* 696 A.2d 1359, 1368 (D.C.1997) ("[A] plaintiff ... must have an opportunity to develop the record in opposition to the claim [for a *pro rata* credit]") (citing *Washington v. Washington Hosp. Ctr.,* 579 A.2d 177, 188 (D.C.1990)).

contribution, is not supported by any stipulation[10] and is contradicted by its blanket denial of liability in the settlement agreement. *See supra* note 3. As we have explained, for a nonsettling defendant to receive a *pro rata* credit, the liability of the settling defendants must be established either by adjudication or by stipulation between the plaintiff and the settling party. *See Shannon, supra* note 9, 696 A.2d at 1367 (citing *Berg,* 673 A.2d at 1251 & n. 13); *Washington Hosp. Ctr., supra* note 5, 722 A.2d at 336 (noting the "essential prerequisite for entitlement to contribution is that the parties be joint tortfeasors in the sense that their negligence concurred in causing the harm to the injured party") (citations omitted); *Washington, supra* note 9, 579 A.2d at 187 (explaining that the right to contribution is contingent upon a finding of joint liability); *Lamphier,* 524 A.2d at 733 & n. 5 (noting that the liability of the settling tortfeasor must be judicially established as a predicate to asserting the right to contribution) (citing *Otis Elevator Co. v. Henderson,* 514 A.2d 784, 786 (D.C. 1986) (per curiam)). As Paul's argument for a *pro rata* credit derives from the right to contribution of the joint tortfeasors, the same requirement applies if the plaintiff, rather than the nonsettling defendant, requests a *pro rata* credit. In the absence of either an adjudication or stipulation that GWU and Dr. Bier were joint tortfeasors, the trial court did not err in granting Dr.

Bier's request to apply a *pro tanto* credit.[11] *Cf. Berg,* 673 A.2d at 1250–51 (stipulation sufficient where the settling tortfeasor admitted to liability in pretrial statement stipulation of facts to the court and "[a]ll parties, including [nonsettling tortfeasor] agree that [settling tortfeasor's] stipulation of liability is enough to make it a joint tortfeasor").

### B. GWU's Appeal (97–CV–50): The Settling Defendant's Cross–Claim for Contribution.

GWU asserts that the trial court abused its discretion in denying its motion to file a cross-claim for contribution against Dr. Bier following the jury verdict. It maintains that there is no equitable reason why it should be required to pay the full amount of the jury verdict while Dr. Bier receives a "free pass," and that such an inequitable result conflicts with this court's longstanding policy of encouraging out-of-court settlements. As we noted earlier in connection with Paul's appeal, a question at issue in this case is whether, even assuming the timeliness of GWU's motion, GWU could claim a right to contribution as a joint tortfeasor given that *its* liability to the plaintiff was neither judicially determined nor the product of a stipulation by the parties. *See supra* notes 10 and 11.[12] Assuming that GWU, as a settling defendant, had a right of contribution against the nonsettling Dr. Bier, we recognize that

**10.** The settlement agreement provided that Paul, the plaintiff, would stipulate to GWU's tortfeasor status in the event Dr. Bier sued GWU for contribution. As Dr. Bier did not sue GWU for contribution, Paul was not required to stipulate, along with GWU, to its joint tortfeasor liability. The record contains no indication that Paul sought to enter into a stipulation with GWU that it had committed, jointly with Dr. Bier, medical malpractice with respect to her.

**11.** It is indeed anomalous that in a case where both the plaintiff and the settling defendant desire application of a *pro rata* credit on the basis of GWU's status as a joint tortfeasor, they have not produced the necessary stipulation. At least a partial answer may be found in that in this case, as opposed to in

*Berg,* GWU and the plaintiff disagree on which one of them should receive the benefit of the *pro rata* credit. We note that although the settlement agreement covers in detail Paul's financial responsibility to indemnify GWU in the event that Dr. Bier claimed contribution or indemnification against GWU, it is silent on the parties' respective rights in the situation that developed here, where it was GWU, not Dr. Bier, making a claim for contribution.

**12.** Thus, we disagree with GWU that its motion should have been allowed in order to conform the pleadings to the evidence under Civil Rule 15(b) because the "only relevant factual issue is whether Dr. Bier is liable to Ms. Paul."

the settling defendant must have available a procedural mechanism to establish the predicate joint tortfeasor liability, even though as a result of settlement, it is no longer party to the lawsuit. This court, however, has yet to decide the issue whether a settling defendant has a right to contribution. *See, e.g., Washington Hosp. Ctr.,* 722 A.2d at 342–43 & nn. 13–15. We do not reach either question, however, because we hold that, even if GWU is a joint tortfeasor with a right to contribution, the trial court did not abuse its discretion in disallowing the cross-claim on the ground that GWU's failure to timely assert its right to contribution was prejudicial to Dr. Bier, the nonsettling defendant.[13]

■■■ The decision whether to grant or deny a motion to file a cross-claim under Civ. R. 13(a) or to amend a pleading under Rule 15 is within the sound discretion of the trial court, and we review the decision for abuse of discretion. We are mindful, however, of the liberal construction we place on pleading rules to achieve substantial justice over formalism. *See Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 474 (D.C.1983); *Eskridge v. Jackson,* 401 A.2d 986, 988 (D.C.1979) (per curiam); *Eagle Wine & Liquor Co. v. Silverberg Elec. Co.,* 402 A.2d 31, 34 (D.C.1979). Although a trial court may not deny a motion to amend the pleadings simply because of undue delay, "the lateness of a motion may well provide the predicate for a proper

determination that prejudice to the opposing party would result if an amendment were allowed." *Eagle Wine & Liquor Co.,* 402 A.2d at 35; *see also Gordon v. Raven Sys. & Research, Inc.,* 462 A.2d 10, 13 (D.C.1983) (no abuse of discretion in denying leave to amend complaint requested eighteen months after filing and after close of discovery, noting that movant gave no reason for delay and opposing party would be prejudiced by having to begin anew the pretrial and trial proceedings).

■■■ In evaluating the timeliness of GWU's motion to file a cross-claim and its potential prejudice to Dr. Bier, we start with the familiar principle we have already discussed in connection with Paul's appeal that a right of contribution does not arise "without a finding that the party seeking contribution is a joint tortfeasor along with the party from whom contribution is sought." *Hall, supra* note 13, 621 A.2d at 850. GWU argues that it did not have a right of contribution against Dr. Bier until he was found to be a tortfeasor, and thus, that GWU could not have filed its cross-claim before the jury's verdict. Here, GWU sought leave to file its cross-claim not only three months after the jury's verdict but also five weeks after the trial court had ruled on Dr. Bier's motion for a *pro tanto* credit. Thus, GWU also argues that its contribution claim was not untimely because it did not accrue until after the trial court awarded a *pro tanto* credit to

---

**13.** There is at first blush a question whether, at the time that GWU sought to file a cross-claim against Dr. Bier, it was a "party" to the lawsuit as it had been dismissed with prejudice pursuant to the settlement agreement. *See* Civ. R. 13(g) (2000) ("A pleading may state as a cross-claim any claim by 1 *party* against a *co-party* arising out of the transaction or occurrence that is the subject matter" of the litigation) (emphasis added). Were the claim otherwise appropriate and timely, however, we do not believe that the fact of dismissal of one defendant should preclude GWU from pursuing its contribution claim as a cross-claim in light of our liberal pleading rules. *Cf. Hall v. George A. Fuller Co.,* 621 A.2d 848, 850–51 (D.C.1993) (holding cross-claim for contribution properly dismissed

where plaintiff had dismissed all of its claims against *all* defendants because cross-claim is dependent upon plaintiff's original claim). With the same purpose of achieving substantial justice, if GWU's late cross-claim was properly denied, a separate complaint for contribution also would be subject to a defense of laches or estoppel. *Cf. Chappelle v. Sharp,* 112 U.S.App.D.C. 182, 183, 301 F.2d 506, 507 (1961) (per curiam), *cert. denied,* 370 U.S. 903, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962). (plaintiff's suit seeking reinstatement as civil servant barred by laches when brought thirty-four and one half months after final administrative action on removal)(citing *Arant v. Lane,* 249 U.S. 367, 372, 39 S.Ct. 293, 63 L.Ed. 650 (1919)).

Dr. Bier and it became clear that GWU had paid a disproportionate share of the liability. According to our case law, "a right of contribution accrues when two or more parties are joint tortfeasors." *Hall, supra* note 13, 621 A.2d at 850 (citations omitted), but is "enforceable only after the one seeking it has been forced to pay." *Bair v. Bryant,* 96 A.2d 508, 510 (D.C. 1953). Although we do not decide whether GWU was a joint tortfeasor, we note that if GWU was not a joint tortfeasor then it had no right to contribution, and if, as GWU subsequently postulated, it was a joint tortfeasor, its right of contribution (assuming that settling defendants have such a right) would have become enforceable at the time, while the litigation against Dr. Bier was still in progress, when it agreed to pay Paul $2,000,000. Moreover, it would not be the trial court's application of the *pro tanto* credit in mid-September 1996, but the verdict at the end of July 1996, that would have alerted GWU to the disproportionality of its settlement with Paul.[14] We therefore are not persuaded that GWU had a reason, based in law, to delay asserting its claim of contribution.

In *Washington,* this court held that a nonsettling defendant is barred from filing a cross-claim for contribution post-trial in the parallel situation to the one in this appeal, where the nonsettling defendant's share of liability after application of a *pro tanto* credit was more than its *pro rata* share. 579 A.2d at 186–88 & n. 11. Even though the right to contribution does not accrue until the nonsettling defendant's status as joint tortfeasor is established, a cross-claim for contribution against a settling defendant must be asserted before the verdict is rendered as the claimant is expected to "safeguard any legitimate claim it might have to lessen the burden of a plaintiff's verdict" by asserting it during trial. *Id.* at 188 (citation omitted). Like-

wise, in *Hall v. General Motors Corp.,* 207 U.S.App.D.C. 350, 647 F.2d 175 (1980), the court indicated that where a nonsettling defendant has a clear opportunity to clarify the issue of a settling defendant's liability by filing a cross-claim during trial and does not do so, the nonsettling defendant is not entitled to a *pro rata* reduction of judgment based on joint liability. *See Id.* at 358–59, 183–84, 647 F.2d 175; *see also Berg,* 673 A.2d at 1250 n. 10 (noting non-settling defendant's responsibility to file cross-claim against settling defendant in principal action to ensure right to a *pro rata* contribution); *Otis Elevator Co.,* 514 A.2d at 786 (concluding that where a nonsettling defendant does not cross-claim against a settling defendant for contribution, and neither the judge nor the jury ever considered liability of settling defendant, nonsettling defendant is only entitled to *pro tanto* contribution). In formulating this rule, we have focused on the prejudice caused by the nonsettling defendant's late assertion of a claim for contribution on the settling defendant, *see Berg,* 673 A.2d at 1250 n. 10, and on the plaintiff, *see Washington,* 579 A.2d at 188 (because "[*pro rata* ] credit's consequences are visited upon the plaintiff .... injured party in settling with one tortfeasor effectively bears the burden that otherwise would fall upon the settling tortfeasor to make contribution").

We see no reason why the same principle should not apply when it is the settling defendant claiming contribution. As the trial court aptly noted:

> If equity bars a late-filed cross-claim for contribution by the non-settling defendant even where its share of liability after a *pro tanto* credit is more than its *pro rata* share, it is hard to see why equity should entertain an after-the-fact

---

14. It has been said with respect to accrual for statute of limitation purposes that "the statute of limitations begins to run against the right to contribution only from the time of the disproportionate discharge of the common

obligation by one of the common obligors." *Bair,* 96 A.2d at 510 & n. 5 (citing *Knell v. Feltman,* 85 U.S.App.D.C. 22, 25, 174 F.2d 662, 665 (1949)).

cross-claim by the settling defendant when the verdict goes the other way. Like a nonsettling defendant, a settling defendant sleeps on its rights when it fails to file a timely cross-claim to determine the respective liability of the defendants. Fairness dictates that all defendants, whether they choose to settle or litigate, file cross-claims for contribution before the verdict in order to give notice to other defendants that they will be required to pay their fair share of damages to a joint tortfeasor in the event that they are found liable.[15] We recognize that a nonsettling defendant does not need the spur of a claim for contribution to defend itself against a plaintiff's claim of liability. The manner of defense and trial strategy may be different, however, in light of a claim for contribution by an alleged joint tortfeasor. In this case, as we noted earlier in consideration of Paul's appeal, there was no request to apportion the injury attributable to Dr. Bier from that attributable to GWU. See *supra* note 5. Although there can be no doubt that it was in Dr. Bier's interest even prior to GWU's settlement to separate its responsibility from that of GWU if it could have reduced his potential liability to Paul as a result, Dr. Bier may have considered that the most effective defense with the jury was one that denied all liability on his part and attempted to minimize the injury alleged by Paul. Had Dr. Bier been put on notice of GWU's intent to claim for contribution, he would have had an incentive to build a case during trial that separated his liability from that of GWU if he knew that joint tortfeasor liability would be a central feature of his responsibility to GWU. *See Washington, supra* note 9, 579 A.2d at 188 (noting ways in which plaintiff might have litigated differently in light of request for *pro rata* credit even if it meant shifting theories before jury).

In this case, were the court to grant GWU, a settling defendant, leave to file its belated cross-claim for contribution against Dr. Bier, in the words of the trial court, GWU would "have all of the benefits of a claim for contribution with none of the burdens that should, in equity, attend such a claim." Given that the $2,000,000 settlement amount equals the jury verdict, the *pro tanto* credit protects GWU against any contribution claim by Dr. Bier. Even if GWU's *pro rata* share of the verdict had exceeded the settlement amount, and Dr. Bier had claimed a right to contribution, the indemnification clause in the settlement agreement between Paul and GWU ensures that GWU will be shielded from any further contribution. *See Rose,* 163 U.S.App.D.C. at 250, 501 F.2d at 810 (noting that settling defendants "cannot equitably insist on a continuing involvement in the litigation for the purpose of invoking contribution to lessen their [settlement] payment when they have no exposure to an increase in payment if contribution should be sought from them"). Dr. Bier, on the other hand, would be precluded from filing a cross-claim for contribution against GWU after the verdict. *See Washington, supra* note 9, 579 A.2d at 187–88. Thus, as the trial court observed, GWU filed its cross-claim only after it was protected from any "downside risk of contribution to Dr. Bier."

A requirement that all defendants file cross-claims for contribution before verdict is in line with our longstanding policy of encouraging settlements. *See, e.g., Moses–Ecco Co. v. Roscoe–Ajax Corp.,* 115 U.S.App.D.C. 366, 371 & n. 4, 320 F.2d 685, 690 & n. 4 (1963) (citing *Martello,* 112 U.S.App.D.C. at 130, 300 F.2d at 722, and *McKenna v. Austin,* 77 U.S.App.D.C. 228, 234, 134 F.2d 659, 665 (1943)). Had GWU filed a timely cross-claim for contribution,

---

**15.** The rule is also fair to plaintiffs. *See Shannon, supra* note 9, 696 A.2d at 1368 (noting that a defendant's claim to a *pro rata* credit is viewed more favorably when it is swiftly asserted as a plaintiff is entitled to the "earliest possible notice of a defendant's intent to claim a pro rata credit but also must have an opportunity to develop the record in opposition to the claim") (citing *Washington, supra* note 9, 579 A.2d at 188).

Dr. Bier would have been put on notice that, should the jury find him negligent, he would be required to pay his *pro rata* share of the damages award. While this information may not have induced Dr. Bier to settle, especially if he believed that he would be exonerated by the jury, at the very least a contribution cross-claim would have informed Dr. Bier's strategic choices and should, therefore, have been filed during the course of the litigation. Accordingly, the trial court did not abuse its discretion in denying as untimely GWU's motion to cross-claim for contribution, filed several months after GWU knew the jury verdict awarding $2,000,000 to Paul and the trial court's order granting Dr. Bier's motion for a *pro tanto* credit against the verdict.[16]

For the foregoing reasons, we affirm the trial court's application of a *pro tanto* credit and denial of GWU's post-verdict motion to amend its pleadings to include a cross-claim for contribution.

*So ordered.*

RUIZ, Associate Judge, concurring:

I write separately to urge that the court finally decide—if necessary, en banc—a question that we narrowly avoid in this appeal, whether a settling defendant has a right to sue a nonsettling joint tortfeasor for contribution. I also think that the en banc court should reconsider the opinion in *Berg v. Footer,* 673 A.2d 1244 (D.C.1996), which in part drives the result we reach today, with respect to the rights of the injured plaintiff. In so doing, we should comprehensively address the issue of the proper application of *pro tanto* and *pro rata* credits and provide litigants with clear guidance on the applicable rules so that they, in turn, can make informed decisions in the course of litigation and structure their private agreements accordingly.

This is the first case where this court has been presented with a situation where both the injured plaintiff seeks a *pro rata* credit in order to recover more than the jury verdict—a situation we allowed in *Berg,* 673 A.2d at 1257—and a settling tortfeasor claims contribution in order to avoid paying (through its settlement with the plaintiff) more than its *pro rata* share of the jury verdict. Although both argue for application of a *pro rata* credit against the verdict, they are at odds over which party should receive the benefit: the injured plaintiff argues that after application of a *pro rata* credit that will reduce the jury verdict by half, she should receive the adjudicated tortfeasor's *pro rata* share of the jury verdict (in this case, when combined with the settlement, another $1,000,000 in excess of the amount the jury awarded in compensatory damages), but the settling tortfeasor claims that it should be able to recover that amount from the

16. GWU maintains that any prejudice to Dr. Bier resulting from its post-verdict claim for contribution is outweighed by the fact that Dr. Bier, the only adjudicated tortfeasor, will owe nothing towards the verdict after the application of a *pro tanto* credit. *See Hall,* 621 A.2d at 850 & n. 3 (noting that right of contribution is an equitable remedy which arises among joint tortfeasors to promote fairness, by distributing plaintiff's losses equally among wrongdoers, and deterrence, by ensuring that all responsible parties share in cost of wrongdoing). However, as this court explained in *Berg,* "making particular credit rules contingent upon" whether a party is unjustly enriched "would only increase uncertainty and make it even more difficult for litigants to negotiate settlements." 673 A.2d at 1257. Moreover, in this case the jury was not asked to determine whether GWU was negligent. GWU has not been exonerated; it merely settled to avoid the risk of litigation. By seeking contribution, however, GWU now concedes that it is a tortfeasor. Therefore, although GWU is not an adjudicated tortfeasor, we have no basis to assume that it is inequitable for it to have paid $2,000,000 to Paul. *Cf. Rose,* 163 U.S.App.D.C. at 248, 501 F.2d at 808 (declining to sustain a *pro tanto* credit "in an amount exceeding the pro rata share of the verdict ascribable to the settling defendants," who were found by the trial court *not* to be joint tortfeasors, because the nonsettling defendant—the only one negligent—would have been unjustly enriched).

adjudicated tortfeasor.[1] These conflicting claims reveal tensions in our jurisprudence that should be addressed.

Even though *Berg* did not squarely address the conflicting claims before us, I do not believe that we are free to "do equity" as the dissent suggests. *Berg* clearly holds that "whenever the plaintiff settles with a joint tortfeasor, the nonsettling defendant shall receive a *pro rata* credit under *Martello*, reflecting the [nonsettling] defendant's equitable right to contribution and no more, even when the plaintiff's recovery from all defendants will exceed the amount of the verdict and thus violate the one satisfaction rule." *Id.* at 1245 (referring to *Martello v. Hawley*, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962)). Given application of a *pro rata* credit against the verdict, and the resulting obligation of the adjudicated tortfeasor to pay the remaining verdict to the plaintiff, *Berg* would not appear to admit the possibility that the settling tortfeasor can step in to intercept monies that otherwise would be payable to the plaintiff.

I would overrule *Berg* to the extent it permits a plaintiff to request application of a *pro rata* credit where the result will be that the plaintiff will recover more than the jury verdict; and I would preclude settling defendants from suing for contribution. I make these proposals fully aware that they are not completely satisfactory. In particular, precluding a settling tortfeasor from contribution (while permitting a suit for contribution against

the settlor) is subject to criticism as discouraging settlement because the settling tortfeasor can have no assurance that settlement finally fixes its liability.[2] But all possible solutions have drawbacks.

As we noted in *Berg*, 673 A.2d at 1252, there are three possible solutions to this highly debated issue:[3]

a) settlement extinguishes the plaintiff's claim against the settling tortfeasor and a *pro tanto* credit is applied against the jury verdict; the nonsettling defendant retains a claim for contribution against the settling tortfeasor if the remaining verdict exceeds the nonsettling defendant's equitable share;

b) settlement extinguishes both the plaintiff's claim and any claim for contribution by the nonsettling tortfeasor, usually subject to a determination of the "fairness" of the settlement. Once such a hearing is provided for, and the finality of settlement suspended, the incentive to settle is diminished; and

c) settlement extinguishes the plaintiff's claim against the settling tortfeasor, and the verdict is reduced by the equitable share of the settling tortfeasor's liability in recognition of the nonsettlor's right of contribution.

A *pro rata* credit against the verdict represents the nonsettling defendant's "right to contribution" from the settling defendant when both have been found liable for the plaintiff's injuries. *Berg*, 673

---

1. In *Berg*, the interests of the plaintiff and the settling tortfeasor hospital were aligned.

2. As we have seen in *Berg* and in this appeal, however, settling tortfeasors can protect themselves contractually in the event they are called upon for contribution. *See ante* at note 11.

3. Traditionally, the Restatement had taken no position on the matter. *See* RESTATEMENT (SECOND) OF TORTS § 886A & cmt. m. The Uniform Law Commissioners have been of various minds on the subject, sequentially adopting each of the three solutions, in 1939, 1955, and 1977. *See id.* "Case authorities and statutes are also divided and there is no semblance of

a consensus." *Id.* In 1999, recognizing that "no perfect method exists for apportioning liability among a plaintiff, a settling tortfeasor and a nonsettling tortfeasor," the Restatement adopted application of a credit "by the comparative share of damages attributed to a settling tortfeasor who otherwise would have been liable for contribution" to a nonsettling tortfeasor, even if it results in the plaintiff's recovering more than the verdict awarded by the jury. RESTATEMENT (THIRD) OF TORTS, § 16 & cmts. c. & e. Contrary to our jurisprudence, a nonsettling tortfeasor would have no right of contribution against a settling tortfeasor *Id.*, § 23 cmt. c.

A.2d at 1248. A *pro rata* credit, therefore, acts as "a substitute for the non-settling defendant's actual claim for contribution that persists after the dismissal of the principal claim against a settling defendant." *Id.* (quoting *Washington v. Washington Hosp. Ctr.*, 579 A.2d 177, 187 (D.C. 1990)). Thus, it is the nonsettling defendant's right to contribution, not the plaintiff's right to compensation, which is given effect in the application of a *pro rata* credit. The *pro tanto* credit, on the other hand, is not premised on ensuring equity between joint tortfeasors, but is based on the rationale that the plaintiff is entitled to no more than the loss actually suffered. *See Berg*, 673 A.2d at 1248–49. In this appeal, it is undisputed that the plaintiff received $2,000,000 in settlement from the settling defendant, which equaled the total amount of the jury verdict. Application of the *pro tanto* credit, which eliminated the nonsettling defendant's obligation to the plaintiff, merely recognized the reality that, by the time the jury returned its

verdict, the plaintiff had no uncompensated damage outstanding. This is a good and sufficient reason not to recognize a plaintiff's right to contest application of a *pro tanto* credit where the plaintiff has received the full amount of the jury verdict.[4] It makes no sense to entitle a fully-compensated plaintiff to assert *the nonsettling defendant's right* to contribution as a way of achieving a windfall when the nonsettling defendant is not asserting its own right.[5]

I also would hold that settlement extinguishes the settling tortfeasor's right of contribution against other joint tortfeasors. This is a more controversial point. Most states prohibit a settling tortfeasor from seeking contribution once it turns out that the settlement amount is more than that defendant's proportionate share of the damages awarded after trial. *See Berg*, 673 A.2d at 1253–54 & n. 17 (citing *McDermott*, 511 U.S. at 211 n. 13, 114 S.Ct. 1461).[6] Noting the principle of equity un-

4. On the other hand, the plaintiff can properly claim an interest in contesting application of a *pro rata* credit where its application would reduce the plaintiff's actual receipt of compensation below the jury verdict, *i.e.*, where the plaintiff settled for less than the settling tortfeasor's equitable share, as measured by the jury verdict. *See District of Columbia v. Shannon*, 696 A.2d 1359, 1368 (D.C.1997). *But see Martello*, 112 U.S.App. D.C. at 132, 300 F.2d at 724 (in cases where application of a *pro rata* credit will yield the plaintiff *less* than the jury verdict, she has no cause to complain because "by [her] settlement, the plaintiff has sold one-half of [her] claim for damages").

5. Although the result in *Berg* was to allow the fully satisfied plaintiff to receive a windfall, the court did not come to that conclusion, as the dissent suggests, because such a result "is preferable to a similar windfall" for the defendant who has been adjudicated to be negligent. Rather, *Berg* explains that the windfall to the plaintiff is the result of application of the neutral principle announced in *Martello*, by which the *Berg* division was bound, *see M.A.P. v. Ryan*, 285 A.2d 310 (1971), not moral outrage because the nonsettling defendant might end up paying less than its fair share. 673 A.2d at 1257 ("We are persuaded, as the Supreme Court was in *McDermott*, that consistency with established precedent appli-

cable to settlement with joint tortfeasors weighs in favor of applying *Martello*, not the one satisfaction rule in *Snowden*, to the unusual facts of this case.") (referring to *Snowden v. D.C. Transit Sys., Inc.*, 147 U.S.App. D.C. 204, 454 F.2d 1047 (1971)).

6. The Uniform Contribution Among Tortfeasors Act, adopted by a majority of the states, prohibits contribution to a settling tortfeasor from another tortfeasor "whose liability ... is not extinguished by the settlement." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 23, Reporters' Note on Comment h (quoting § 2(3) of the 1939 version and § 1(d) of the 1955 version of the Uniform Contribution Among Tortfeasors Act). The reporters of the Restatement explain that the "clear implication is that a settlor *can* obtain contribution when the settlement extinguishes the liability of the other tortfeasor." *Id. Cf. id.* (noting that three states, New York, Texas and Minnesota, do not permit settlors to obtain contribution). The Restatement provides that the liability of the person against whom contribution is sought may be extinguished either by obtaining a release in favor of the nonsettlor or by satisfying the judgment. *Id.* § 23 cmt. b. Our holding in *Berg* would appear to preclude the settling tortfeasor's right to contribution under the Restatement's proposal because *Berg* dictates payment of the

derlying the contribution doctrine, the United States Court of Appeals for the District of Columbia Circuit has explained that

> [t]he settling party has settled his share of the case for a specified amount. That amount may not be increased because his settlement turns [out] to be for less than a *pro rata* share.[7] [Therefore, i]t should not be subject to reduction through contribution because he has settled for what turns out to be greater than a *pro rata* share.

*Rose*, 163 U.S.App.D.C. at 250 n. 10, 501 F.2d at 810 n. 10. We have also noted a contrary view, at least in cases where application of *pro tanto* credit would eliminate the nonsettling defendant's liability. *See Berg*, 673 A.2d at 1253–54 n. 17 (citing *McKenna v. Austin*, 77 U.S.App.D.C. 228, 234, 134 F.2d 659, 665 (1943)).

Although there are arguments to be made for each approach, I believe that ensuring the maximum finality of settlements freely reached by the parties, will prove to be the best incentive to settlement.[8] In his dissent, Judge Schwelb argues for a different proposition. The en banc court can consider the alternatives and decide, in a comprehensive context, the set of rules that will better promote the desirable policy of encouraging fair settlements, without unduly penalizing litigants who prefer an adjudication of liability. Sitting en banc, the court can do what the *Berg* division felt it could not accom-

plish because of the binding precedent set by *Martello*. As the *Berg* opinion noted,

> If *Martello* were not the law, recognizing the nonsettling tortfeasor's right (at least when the settlement is less than half the verdict) to a *pro rata* credit, we might look at this case differently. There is much to be said for an across the board *pro tanto* (without contribution) rule, coupled with a required showing of a good faith settlement. Under such a rule, whether the settling defendant is a joint tortfeasor or not, (1) settlement pressure on all defendants is great, and (2) a plaintiff, by settling with one defendant and successfully litigating against another, will always be made whole in the amount of the jury's verdict.
>
> Bound by precedent, however, we are not free to consider overruling our bifurcated system of credit rules under *Martello* and *Snowden* even if one uniform credit rule regime would be demonstrably superior.

673 A.2d at 1244.

However the full court ultimately decides these issues, the most important goal is that they be settled in a definitive manner so that litigants have a clear set of rules by which to make decisions in the course of litigation. I would leave it to the parties, in their litigation decisions and private agreements, to determine who is to bear the risk of settling—or not—for an amount that turns out not to be "fair"

---

nonsettling tortfeasor's *pro rata* share to the plaintiff, so that settlement would not have *de facto* extinguished the nonsettling tortfeasor's liability to plaintiff. The new Restatement provision requiring a showing "only that the settlement was reasonable," *id.* § 23 cmt. h., also would overturn "the essential prerequisite for entitlement to contribution ... that the parties be joint tortfeasors," *District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 336 (D.C.1998) (en banc).

**7.** The settlement amount could, of course, be increased if the nonsettling tortfeasor sues for contribution. It is usual for settlement agreements to provide, however, that the plaintiff will indemnify the settling tortfeasor against

such an eventuality. See opinion of the court, *ante* at note 11. *But see* RESTATEMENT, *supra* note 5, § 23 cmt. i. (precluding right of contribution against a settling tortfeasor).

**8.** The greatest incentive to settlement is provided if settlement automatically extinguishes not only the plaintiff's claim, but also both joint tortfeasors' rights to contribution. This has been considered also to provide a risk of collusion between the plaintiff and the settling tortfeasor, leading to the requirement of a "fairness hearing" on the terms of the settlement before it can be deemed to preclude the nonsettlor's right of contribution.

(from a particular litigant's perspective). This is not the sporting theory of justice the dissent laments, which usually can only be so characterized with the benefit of $^{20}\!/_{20}$ hindsight. The reality is that the amount of settlement, as here, is usually kept confidential, and litigants act out of a sense of enlightened self interest based on their view of what a jury is likely to do given the evidence presented, not on foolish (and potentially very expensive) bets. Short of holding matters in abeyance until all the information is in, which I believe is the greatest disincentive of all to settlement, there is no way to ensure mathematical fairness in an ongoing and sometimes unpredictable process during which parties perforce make decisions based on imperfect information. I would resist the temptation to try to have the rules of contribution operate as a judicial *deus ex machina* to make all things right (by our lights) in the end.

REID, Associate Judge, concurring:

Although I join Judge Ruiz' opinion for the court, I am of the view that the issues raised by this matter should be considered by the en banc court, after supplemental briefing.

SCHWELB, Associate Judge, dissenting:

In my opinion, The George Washington University (GWU) should have been permitted to file its cross-claim. On the merits, I believe that GWU is entitled to contribution from Dr. Bier in the amount of one million dollars. Because the majority holds otherwise, I must respectfully dissent.

## I.

The facts have been fully set forth in the majority opinion, and I confine myself to the essentials. Ms. Paul sued GWU and Dr. Bier for medical malpractice. The trial judge found, and all members of the division agree, that the injury alleged to have been inflicted by GWU cannot reasonably be separated from the injury said to have been caused by Dr. Bier. Ms. Paul settled with GWU for two million dollars. Her case against Dr. Bier subsequently went to trial, and the jury awarded her two million dollars. The trial judge held that Dr. Bier was entitled to a *pro tanto* credit; *i.e.*, a credit of the two million dollars paid by GWU on the judgment against Dr. Bier in the same amount. As explained in the majority opinion, the judge denied GWU leave to cross-claim for contribution against Dr. Bier, who was thus required to pay nothing.

In the trial court, and again on appeal, each of the three parties to the suit has proposed a different resolution of the parties' respective rights and liabilities. Each party has a million dollars at stake, and unsurprisingly, each has embraced a plan saving her, it, or him a million dollars. In the table that follows, I set forth the practical consequences of each party's proposal, *i.e.*, how much each party would receive or pay:

| PROPONENT OF PLAN | TOTAL AMOUNT TO BE PAID TO MS. PAUL | AMOUNT TO BE PAID BY GWU | AMOUNT TO BE PAID BY DR. BIER |
|---|---|---|---|
| Ms. Paul | $3,000,000 | $2,000,000 | $1,000,000 |
| GWU | $2,000,000 | $1,000,000 | $1,000,000 |
| Dr. Bier | $2,000,000 | $2,000,000 | –0– |

The trial judge's rulings had the effect of approving the plan proposed by Dr. Bier.

Ms. Paul appeals because, if the judge's order is affirmed, she will receive only two million dollars rather than the three million to which she claims to be entitled. GWU also appeals, for it hopes ultimately to have to contribute only one million dollars, and not twice that amount as required under the trial judge's disposition. Discerning no mischief in a resolution that frees him from any liability at all, Dr. Bier urges this court to affirm the judgment.

## II.

This case is somewhat unusual in that the issues presented are entirely equitable in nature. There is no statute or rule of court dictating the result. On the questions that I consider most important, there

is no binding precedent in this jurisdiction. In general, as Chief Justice Burger has written, "[o]ur duty, to paraphrase Mr. Justice Holmes in a conversation with Judge Learned Hand, is not to do justice but to apply the law and hope that justice is done." *Bifulco v. United States,* 447 U.S. 381, 402, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) (concurring opinion) (citing *The Spirit of Liberty: Papers and Addresses of Learned Hand* 306–07 (Dillard ed.1960)). In this case, however, we are free, without any unwise resort to judicial activism, to fashion the most equitable resolution of the issues of law and legal policy that have been presented to us.[1]

Ms. Paul suffered an undivided injury which the jury assessed at two million dollars. Dr. Bier was found negligent. GWU has now described itself as a joint tortfeasor and thus admits, for present purposes, that it too was negligent. Logically, it seems to me that the most equitable solution is for Ms. Paul to receive two million dollars, with Dr. Bier and GWU paying her one million each. This disposition compensates Ms. Paul fully for her injury, unjustly enriches no one, and divides liability equally between the two negligent defendants.[2] In my opinion, the principal question is whether there are overriding reliance interests or reasons in law or policy for rejecting this common-sense result. As I show below, there are no such overriding reasons.

### III.

I first address, briefly, Ms. Paul's claim that she should receive three million dollars rather than two million.

The teaching of *Berg v. Footer,* 673 A.2d 1244, 1248–49 (D.C.1996), and of the au-thorities on which the court in *Berg* relied, is that, for somewhat arcane reasons, a non-settling defendant receives *pro rata* credit if the settling defendant is a joint tortfeasor, but *pro tanto* credit if the settling defendant is not a joint tortfeasor. The determination that a party is a joint tortfeasor can be effected by adjudication or by stipulation. *Id.* at 1251. Moreover,

> whenever the plaintiff settles with a joint tortfeasor, the nonsettling defendant shall receive a *pro rata* credit under *Martello* [*v. Hawley,* 112 U.S.App. D.C. 129, 300 F.2d 721 (1962) ], reflecting the defendant's equitable right to contribution and no more, even when the plaintiff's recovery from all defendants will exceed the amount of the verdict and thus violate the one satisfaction rule.

*Id.* at 1245.

In the present case, there has been no ruling by the court that GWU was a joint tortfeasor, and there has likewise been no formal stipulation to that effect. Ms. Paul has, however, alleged that GWU was a joint tortfeasor. Notwithstanding its prior denials of malpractice, GWU now asserts, for purposes of its cross-claim, that it should be treated as a tortfeasor. Ms. Paul having suffered a single indivisible injury, it follows that if GWU was a tortfeasor at all, then it was a joint tortfeasor. Under these circumstances, I believe that we have here the substantial equivalent of a stipulation of joint tortfeasorship. If both affected parties assert the same proposition to be true, the fact that this assertion is not contained in a formal stipulation seems irrelevant; to hold otherwise would exalt form over substance to an unacceptable degree.[3] I therefore conclude that un-

---

1. In my opinion, these issues are basically legal in nature, and we should review the trial judge's rulings *de novo.* Dr. Bier's claim that he relied to his detriment on certain authorities, see Part IV B, *infra,* could theoretically raise issues of fact. I believe, however, for reasons stated below, that this claim fails as a matter of law.

2. The District of Columbia is not a comparative negligence jurisdiction. If it is decided that both GWU and Dr. Bier must contribute to making Ms. Paul whole, there is no reason to require one of the defendants to pay more than the other must pay.

3. I see no relevance to the fact that Dr. Bier has not stipulated to anything.

der *Berg,* as between Ms. Paul and Dr. Bier, Ms. Paul should prevail. *Berg,* as applied to this case, holds that a million dollar windfall for Ms. Paul, the injured party, is preferable to a similar windfall for Dr. Bier, who has been adjudicated to have been negligent, and who, remarkably, is asking that he be excused from paying anything at all.

But *Berg* did not decide whether, if someone in Dr. Bier's position is required to contribute a million dollars as his *pro rata* share, the beneficiary should be the plaintiff or the settling defendant. Indeed, that case did not involve any claim by the settling defendant. *Berg* authorizes a narrow departure from the "one satisfaction rule" to ensure that the non-settling tortfeasor does not receive an undeserved windfall. *Berg* should not be read as making any greater inroad than that on the "one satisfaction rule."

In my opinion, the reasons in *Berg* for providing the plaintiff with compensation in excess of his or her damages do not apply here. I know of no basis in law or policy for awarding Ms. Paul an extra million dollars just to ensure that GWU pays the entire amount for which it settled. Accordingly, I would apply the "one satisfaction" principle and limit Ms. Paul's recovery to two million dollars, which is the amount at which the jury fixed the compensable value of her injury.

## IV.

There appear to be two possible theories upon which GWU might be denied recovery vis-a-vis Dr. Bier. The first is that a settling defendant has no right to seek contribution from a non-settling defendant. The second is that, even if the settling defendant has such a right, GWU waived it in this case by seeking relief too late. My colleagues in the majority deny relief on the basis of the second theory. In her concurring opinion, Judge Ruiz urges that this court also adopt the first theory. I disagree with both of these theories.

A. *The settling defendant's right to contribution.*

"Most jurisdictions bar the settling defendant from seeking contribution if it settles for more than its proportionate share of the damages." *Berg, supra,* 673 A.2d at 1253 n. 17 (citing *McDermott, Inc. v. AmClyde and River Don Castings, Ltd.,* 511 U.S. 202, 211 n. 13, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994)). There is no dispositive case law in this jurisdiction, however, and the question remains an open one. *Id.* at 1254 & n. 17. Judge (later Justice) Rutledge, writing for the court in *McKenna v. Austin,* 77 U.S.App.D.C. 228, 234, 134 F.2d 659, 665 (1943), was of the opinion that

> [b]y settling with the injured person [a defendant] does not surrender his [or her] right of contribution[,] and the settlement should not give the other wrongdoer an advantage. Consequently he [or she] should recover from the latter the amount necessary to equalize the payments.

*Accord, Early Settlers Ins. Co. v. Schweid,* 221 A.2d 920, 922 (D.C.1966) (permitting settling defendant to sue for contribution or indemnification); *Taylor v. Tellez,* 610 A.2d 252, 253–55 (D.C.1992) (same); *but cf. Rose v. Associated Anesthesiologists,* 163 U.S.App.D.C. 246, 250, 501 F.2d 806, 810 (1974) (Leventhal, J.) (rejecting *McKenna* and stating that settling defendants "cannot equitably insist on a continuing involvement in the litigation for the purpose of invoking contribution to lessen their payment when they have no exposure to an increase in payment if contribution should be sought from them").[4]

An issue that finds distinguished jurists like Justice Rutledge and Judge Leventhal

---

4. The precise question presented here does not appear to have been squarely raised in either *Early Settlers* or *Taylor.* The statement on the issue in *McKenna* was not a part of the holding. *Rose* was decided after *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), and is not binding on this court. *See Berg, supra,* 673 A.2d at 1253 n. 17.

taking opposing positions is obviously a difficult one, and may warrant consideration by the en banc court. Pending such consideration, however, I believe that GWU has the better of the argument.

"Voluntary settlement of civil controversies is in high judicial favor." *Autera v. Robinson*, 136 U.S.App.D.C. 216, 218, 419 F.2d 1197, 1199 (1969); *see also McDermott, supra*, 511 U.S. at 211, 114 S.Ct. 1461. I agree with GWU's contention that a rule permitting the settling defendant to seek contribution would promote the policy favoring voluntary settlement. In the absence of a right to contribution, a defendant is likely to be reluctant to be the first to settle for fear that, if he does so, he will ultimately have to pay a disproportionate share (or, as in this case, the entirety) of the judgment. Moreover, once one defendant has settled with the plaintiff, the remaining defendants will have less incentive to negotiate, for they will know that they can expect a free ride (by virtue of their *pro tanto* credit) to the extent that the verdict does not exceed the amount paid by the settling defendant.

Contrary to the court in *Rose*, 163 U.S.App.D.C. at 250, 501 F.2d at 810, I do not believe that a party in GWU's position should be denied contribution because it has "no exposure to an increase in payment if contribution should be sought from [it]." GWU's argument on this point is persuasive, and I quote from it at some length:

> .... [A]ny settlement [by the settling defendant] for more than half of an eventual verdict will unjustly enrich the defendant who stubbornly went to trial and was found liable. Equity dictates that a settling defendant be permitted to sue for contribution in order to equalize the burden on all defendants.
>
> Significantly, such a suit would not disadvantage the non-settling defendant in any cognizable way. Under no circumstances would the non-settling defendant be required to pay any more than the amount for which he was ad-judged fully liable at trial. In fact, as in this case, when the verdict it less than twice the amount of the settlement, an award of contribution would require the non-settling defendant to pay no more than *half* of any trial verdict. A defendant who has lost a[t] trial should have no cause to complain about this result.
>
> In sum, a regime that seeks to promote settlements is fundamentally flawed if it denies contribution to a settling defendant. Instead, under a well-designed system, every defendant should know that if he settles he will be protected against the risk of owing more than the settlement amount, *and* he can recover some of the settlement amount in contribution if his co-defendant insists on going to trial and loses (and if the verdict is less than twice the settlement). Such a regime would create a salutary incentive to settle, rather than the incentive to delay settlement that the Superior Court's rule engenders.

(Emphasis in original.)

### B. *Waiver.*

The majority holds that "even if GWU is a joint tortfeasor with a right to contribution, the trial court did not abuse its discretion in disallowing the cross-claim on the ground that GWU's failure to timely assert its right to contribution was prejudicial to Dr. Bier.…" In other words, my colleagues are of the opinion that GWU waived its right to a determination, on the merits, regarding whether it should contribute one million dollars or two million as compensation for Ms. Paul. If the majority is right, then this was a remarkably expensive waiver. In any event, I do not agree with the majority's analysis.

A contribution claim accrues only upon the "disproportionate discharge of the common obligation by one of the common obligors." *Bair v. Bryant*, 96 A.2d 508, 510 (D.C.1953). GWU argues that its claim against Dr. Bier "did not accrue until the Superior Court awarded Dr. Bier a credit against the jury's verdict, thus ren-

dering GWU's payment disproportionate." I agree.

In this jurisdiction, cross-claims between defendants are governed by Civ. R. 13(g), which permits the filing of a cross-claim against a co-party who "is or may be liable to the cross-claimant." Rule 13(g), like its federal counterpart, *see Fogel v. United Gas Improvement Co.*, 32 F.R.D. 202, 203 (E.D.Pa.1963), imposes no limitation on the time when a cross-claim must be filed. "The decision whether to allow a cross-claim that meets the test of subdivision (g) is a matter of judicial discretion." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1431, at 242 (1990) (hereinafter WRIGHT, MILLER & KANE). "[I]n the absence of a showing of injustice to some one or a delay of the trial, no arbitrary time limitation without an express rule of court will be imposed." *Id.* (quoting *Fogel, supra,* 32 F.R.D. at 203).

According to the majority, GWU's "right of contribution, assuming that settling defendants have such a right, would have become enforceable at the time, while the litigation against Dr. Bier was still in progress, when it entered into the settlement agreement to pay [Ms.] Paul." But at the time that GWU settled with the plaintiff, it could have had no idea what the result of Ms. Paul's suit against Dr. Bier would be. If the verdict had been for, say, ten million dollars, then GWU obviously would have had no basis for seeking contribution. Thus, at the time the court says GWU was obliged to file its cross-claim, GWU's right to recovery would have been completely speculative. In my opinion, it is contrary to common sense to require a party to file a cross-claim when that party knows that,

depending on future developments, the cross-claim will have no merit whatsoever.[5]

Moreover, on the facts here presented, the consequences imposed by the majority are quite draconian. There was no law in this jurisdiction, and the majority has cited none, declaring unequivocally (or at all) that such a cross-claim must be filed in advance of a party's ascertainment of the extent of the other defendant's liability. "Equity abhors forfeitures ... [and] so, indeed, does the law." *Association of Am. R.Rs. v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citations omitted). It strikes me as quite unreasonable to hold that, by failing to file a pleading at a time when the *sine qua non* of a right to recovery had not yet been established, GWU effected an involuntary forfeiture of its right to a merits determination of such a significant claim.

This is particularly true since, in my judgment, Dr. Bier has failed to make even a colorable showing of detrimental reliance or prejudice. According to the majority, Dr. Bier was prejudiced because "[t]he manner of defense and trial strategy may be different ... in light of a claim for contribution by an alleged joint tortfeasor." But in the preceding sentence, the majority "recognize[s] that a nonsettling defendant does not need the spur of a claim for contribution to defend itself against a plaintiff's claim of liability." Moreover, the majority's analysis assumes its conclusion, for at the time Dr. Bier was preparing his case, there was no authority in this jurisdiction (or, so far as I am aware, in any other) holding that a cross-claim could not be filed after the determination of the nonsettling defendant's liability. Dr. Bier and his attorneys therefore could not have relied, to their detriment or

---

5. To be sure, "a cross-claim need not be mature at the time the cross-claim is originally asserted." *Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Secs., Inc.,* 823 F.Supp. 1188, 1190 (E.D.Pa.1993) (citing 6 WRIGHT, MILLER & KANE, *supra,* § 1431). *Glaziers* arguably stands for the proposition that GWU had the right to file a cross-claim before the disposition of Ms. Paul's claim against Dr. Bier, because Dr. Bier was then a party who "may be liable to GWU," as specified in Rule 13(g). That GWU had the right to act earlier, however, does not mean that its filing of a cross-claim after Dr. Bier's liability to Ms. Paul was adjudicated was untimely. As noted in WRIGHT, MILLER & KANE, *supra,* no time limit is set forth in Rule 13(g), and equitable principles control.

otherwise, on any such authority, nor could they reasonably have assumed that no cross-claim would be filed at a later date. See also discussion at p. 46, *infra*.[6]

In fact, the *only* prejudice Dr. Bier claims that he would suffer if GWU were allowed to file its proposed cross-claim is the denial of a reward for his attorney's alleged "strategic decision" regarding how he should proceed in the case Dr. Bier asserts in his brief that after GWU settled with Ms. Paul, he made a risky tactical choice, presumably through counsel, not to file a cross-claim against GWU because he believed that the verdict against him would not exceed twice the settlement. According to Dr. Bier, he was "betting" that he would be awarded a *pro tanto* credit, and that this credit would be more advantageous to him than the *pro rata* credit that he would have received if he had filed a cross-claim and secured an adjudication that GWU was a joint tortfeasor. At oral argument, Dr. Bier's attorney stated that "we bet [the verdict] wouldn't be more than two million dollars."

GWU describes Dr. Bier's argument as "deeply misguided." I agree. First, this kind of "strategic prejudice" and "betting" ought to have no place in the contribution inquiry. Contribution is not a "game of chance" in which the savviest prognosticator gets off free. "The principal purposes of contribution are fairness to joint tortfeasors (by distributing the plaintiff's losses equitably among all wrongdoers) and deterrence (by ensuring that all parties responsible for the injuries will share in the cost of the offending conduct)." *Hall v. George A. Fuller Co.*, 621 A.2d 848, 850 n. 3 (D.C.1993) (citing *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 111,

94 S.Ct. 2174, 40 L.Ed.2d 694 (1974)). A tortfeasor has no right to force an *in* equitable outcome because he "cleverly" devised a strategy which reduced his liability to zero. Dr. Bier asserts, in effect, that his interest in reaping the rewards of a purported "bet" on the result of this litigation should prevail over the equitable and just apportionment of liability for the plaintiff's losses. In my opinion, such a contention—a sort of extreme application of the "sporting contest" theory of litigation—is insupportable and unjust and ought not to be adopted by this court.

Moreover, Dr. Bier's argument depends on a false premise. It is predicated upon his alleged reliance on the proposition that GWU, as a settling defendant, could not recover contribution against him.[7] But this proposition was not settled law at the time, and is not settled law today. Indeed, the question whether a settling defendant may obtain contribution against a non-settling defendant was explicitly left open in *Berg, supra*, 673 A.2d at 1254 n. 17. Accordingly, an award of contribution would not upset any reasonable expectation on Dr. Bier's part based on existing law, and it therefore would not prejudice Dr. Bier's asserted right to be rewarded for his attorney's "strategic" decision-making.

## V.

For the foregoing reasons, I respectfully dissent

---

6. During oral argument, Dr. Bier's attorney was questioned intensively as to what authorities he claimed to have relied upon for this proposition and other related ones. Counsel was unable to provide a meaningful response to these questions simply because there were no such authorities.

7. As we have noted, see p. 45, *supra*, Dr. Bier's position also assumed, without basis in authority, that GWU would not be permitted to file a cross-claim after the completion of the trial between Ms. Paul and Dr. Bier.