**M. PIERRE EQUIPMENT COMPANY, INC., Appellant/Cross–Appellee,**

v.

**GRIFFITH CONSUMERS COMPANY, Appellee/Cross–Appellant.**

No. 01–CV–1476, 02–CV–303 and 02–CV–304.

District of Columbia Court of Appeals.

Argued Sept. 4, 2003.

Decided Sept. 18, 2003.

John M. Quinn, with whom Scott M. Hartinger, Olney, MD, was on the brief, for appellant.

Robert W. Ludwig, Washington, DC, with whom Edwin Y. Szeto, was on the brief, for appellee.

Before FARRELL and REID, Associate Judges, and NEWMAN, Senior Judge.

REID, Associate Judge:

This case involves an action for contribution by a settling tortfeasor against a non-settling tortfeasor relating to a home basement oil spill. A jury trial resulted in a finding of liability against the non-settling tortfeasor and a jury verdict of $600,000 as a reasonable amount with respect to the settlement with the homeowners. Appellee/cross-appellant Griffith Consumers Company ("Griffith"), the settling tortfeasor, was awarded the *pro rata* amount of

$300,000 against appellant/cross-appellee M. Pierre Equipment Company ("Pierre"), the non-settling tortfeasor. The trial court denied Pierre's motion for judgment as a matter of law, and Griffith's request for prejudgment interest. The parties filed cross appeals concerning the proper legal standard applicable to a contribution action where the plaintiff tortfeasor has settled with the claimant. The cross appeals also raised evidentiary issues pertaining to the measure of damages, and challenged the trial court's decisions on Pierre's motion for judgment as a matter of law, and Griffith's request for prejudgment interest.

We affirm the judgment of the trial court, and hold that in a contribution action by a settling tortfeasor against a non-settling tortfeasor, the settling tortfeasor has the burden of establishing common liability and the reasonableness of the settlement. We also conclude that the trial court exercised proper discretion in making decisions about the measure of damages; and that it committed no error in denying Pierre's motion for judgment as a matter of law, and Griffith's request for prejudgment interest.

**FACTUAL SUMMARY**

In September 1995, William and Miriam Galston executed a contract with Pierre for the installation of a new heating system in their home, located on Jenifer Street in the Northwest quadrant of the District of Columbia. Under the contract, the heating system was converted from oil to natural gas. Pierre did not "remove, disable or cap the intake piping of the home heating oil system." Moreover, when it performed the contract work, Pierre did not have certain permits required by the District, including master plumbing, gasfitting, and electrical permits.

Around January 1997, Griffith was scheduled to deliver oil to a home on Jocelyn Street, N.W. Instead of going to the proper Jocelyn Street address, Griffith delivered the oil to the home of the Galstons through a pipe that had not been removed, or disabled, or capped. Extensive damage was done to the home and the Galstons were forced to move out of their home due to the need for remediation.

Griffith negotiated a settlement with the Galstons in the amount of $850,000. The Galstons then assigned their rights against Pierre to Griffith, and Griffith filed a lawsuit against Pierre to recover one-half of the $850,000 settlement sum. At the conclusion of the trial, the jury was instructed to return answers to specific questions posed on a jury verdict form. The jury decided that Pierre was "negligent in its handling of the fill and vent pipes . . . [at the Galstons' home] and that such negligence was a proximate cause of the basement oil spill. . . ." The jury also found that the Galstons were not contributorily negligent. In addition, the jury determined that Griffith's $850,000 settlement with the Galstons was not reasonable, and that $600,000 "would have been a reasonable settlement with the Galstons for their damages."

## ANALYSIS

Pierre contends that "the general method upon which the trial court allowed Griffith to proceed was fundamentally flawed." Specifically, Pierre claims that the trial court erred by "instruct[ing] the jury to determine whether the [$850.000] was a reasonable settlement." It argues that the trial court should have followed a traditional damages procedure, requiring proof of the specific damages the Galstons could have recovered against Pierre. Griffith

maintains, by contrast, that "the courts and commentators have uniformly long held that where a settling tortfeasor sues a non-settling tortfeasor for contribution, the settlement amount is the proper basis for damages as long as the settlement amount is reasonable."

■ ■ The contribution issues in this case pose questions of mixed fact and law. We review the legal issues *de novo*, and like the trial court, we are "bound by the jury's factual findings, unless [the trial court] has granted an appropriate and timely post-trial motion which in effect sets aside the jury's verdict." *Hubbard v. Chidel*, 790 A.2d 558, 567 (D.C.2002) (citing *Jones v. Schramm*, 141 U.S.App. D.C. 169, 172–73 n. 11, 436 F.2d 899, 902 (1970)). Under our precedents, "it is now well settled that there is a right of equal contribution among joint tortfeasors."[1] *District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 336 (D.C.1998) (en banc). "The philosophy behind the allowance of contribution is that 'as each tort-feasor was at fault in bringing about the injury to the innocent party, then in justice each tortfeasor should share his part in the burden of making the injured party whole again.' " *Id.* (citing *Martello v. Hawley*, 112 U.S.App. D.C. 129, 131, 300 F.2d 721, 723 (1962) (other citations omitted)).

Although Pierre finds fault with the trial court's approach to Griffith's contribution action in this matter of first impression in the District, it cites no jurisdiction which follows a procedure different from that used in this case. Many jurisdictions have enacted statutes concerning contribution, some of which have adopted or modified the Uniform Contribution Among Tortfea-

---

1. The District is not a comparative negligence jurisdiction. *See Hall v. Carter,* 825 A.2d 954 (D.C.2003) (Schwelb, J. concurring; separate statement by Ferren, J.).

sors Act ("UCATA").[2] Contrary to the thrust of Pierre's argument, § 2 of the UCATA eliminates the notion of comparative negligence in a contribution action: "In determining the pro rata shares of tortfeasors in the entire liability ... their relative degree of fault shall not be considered."

Some jurisdictions impose two requirements in a contribution action brought against a non-settling tortfeasor by a tortfeasor who has settled with the claimant: common liability and the reasonableness of the settlement. As the court said in *Automobile Underwriters Corp. v. Harrelson,* 409 N.W.2d 688 (Iowa 1987): "In a contribution action by a settling tortfeasor against a nonsettling tortfeasor, plaintiff has the burden of proving common liability with the defendant to the injured person and the reasonableness of the settlement negotiated with the injured person by the claimant tortfeasor." *Id.* at 690 (citations omitted). *See also Transport Ins. Co. v. Chrysler Corp.,* 71 F.3d 720, 722 (8th Cir. 1995) ("Contribution is available to a settling tortfeasor if the amount paid in settlement is reasonable."); *Traveler's Ins. Co. v. United States,* 283 F.Supp. 14, 31 (S.D.Tex.1968) ("[I]n a suit for contribution the alleged joint tortfeasor has the opportunity to raise the issue of common liability by claiming ... that ... the terms of the settlement were unreasonable."). Moreover, Comment (d) to the RESTATEMENT OF THE LAW (SECOND) TORTS, § 886A (contribution among tortfeasors) states:

> *Unreasonable settlements.* In particular, when a tortfeasor without suffering a judgment against him has voluntarily made a settlement with the plaintiff and a payment that exceeds any amount that would be reasonable under the circumstances, he should not be permitted to inflict liability for contribution regarding the excess upon another tortfeasor who has not entered into the same settlement. The reasonableness of the settlement is always open to inquiry in the suit for contribution, and the tortfeasor making it has the burden of establishing the reasonableness of the payment he has made.

Comment (g) to § 886A also makes clear that: "If one from whom contribution is sought is not in fact liable to the injured person, he is not liable for contribution." Thus, the Restatement also envisions that a tortfeasor claiming contribution against another must prove common liability and the reasonableness of the settlement.

■ Here, consistent with the Restatement and other authorities, the trial court instructed the jury that it must determine not only whether Pierre was liable to the Galstons because it was negligent and that negligence was a proximate cause of the oil spill into their basement, but also whether the settlement between the Galstons and Griffith was reasonable. We conclude that this instruction was proper, and we now hold that a settling tortfeasor who brings a contribution action against a non-settling tortfeasor in the District of Columbia has the burden of establishing the liability of the non-settling tortfeasor, and the reasonableness of its settlement with the injured person(s).

Both Pierre and Griffith complain about the trial court's decision regarding certain evidence pertaining to damages and the reasonableness of Griffith's settlement

---

2. The UCATA was promulgated by the Conference of Commisioners on Uniform State Laws in 1939, and revised in 1955. The District has not adopted or modified the Act. Rather, its "law pertaining to the right of contribution among joint tortfeasors has been established by case precedent rather than by statute." *Washington Hosp. Ctr., supra,* 722 A.2d at 336 (citing *Lamphier v. Washington Hosp. Ctr.,* 524 A.2d 729, 733 (D.C.1987)).

with the Galstons. For example, Griffith argues that the trial court abused its discretion by excluding from consideration the emotional distress claims of the Galstons, and the impact of the basement oil spill on the Galtons' professional lives, amounts totaling approximately $450,000. Pierre contends that the court should have excluded more of the damages evidence tendered by Griffith.

■ "An evidentiary ruling by a trial judge on the relevancy of a particular item is a highly discretionary decision that will be upset on appeal only upon a showing of grave abuse." *Square 345 Assocs. Ltd. P'ship v. District of Columbia,* 721 A.2d 963, 969 (D.C.1998) (quoting *Roundtree v. United States,* 581 A.2d 315, 328 (D.C.1990)) (other citations and internal quotation marks omitted). The trial court in this case gave a rather comprehensive instruction to the jury on the reasonableness of the damages reflected in the settlement agreement. The instruction covered the general categories of damages to be considered, as well as provided detailed guidance concerning the assessment of damages relating to the Galstons' property. It was consistent with the objective and subjective factors that other courts have mentioned in setting guidelines for the evaluation of the reasonableness of damages reflected in a settlement with the injured person(s). *See City of Tucson v. Superior Court,* 165 Ariz. 236, 798 P.2d 374, 380 (1990) (citing *Home Ins. Co. v. Advance Mach. Co.,* 443 So.2d 165, 168–69 (Fla.App.1983)). Furthermore, the record shows that the trial court gave careful consideration to its decision to disallow certain claims, such as that for emotional distress. In short, based upon our review of the record we are satisfied that the trial court did not abuse its discretion in making evidentiary decisions relating to

damages and the reasonableness of the settlement agreement.

■ Pierre argues that the trial court erred in denying its motions for judgment as a matter of law which were made during trial. "A [motion for judgment as a matter of law] is proper only if there is no evidentiary foundation, including all rational inferences from the evidence, by which a reasonable juror could find for the party opposing the motion, considering all the evidence in the light most favorable to that party." *Majeska v. District of Columbia,* 812 A.2d 948, 950 (D.C.2002) (quoting *Pazmino v. Washington Metro. Area Transit Auth.,* 638 A.2d 677, 678 (D.C.1994) (citations and internal quotation marks omitted)). Moreover, "[w]hen viewing the evidence, the court must take care to avoid weighing the evidence, passing on the credibility of witnesses or substituting its judgment for that of the jury." *Id.*

■ Despite Pierre's assertions that it complied with the proper standard of care, and that the Galstons were contributorily negligent, substantial evidence had been introduced at the time its motions for judgment as a matter of law were made, including testimony by an expert, showing that Pierre was negligent and its negligence was a proximate cause of the basement oil spill. Viewed in the light most favorable to Griffith, the evidence showed that Pierre did not obtain the required regulatory licenses, permits and inspections relating to its work on the Galstons' property. The expert witness presented by Griffith, Mr. Roland E. Kinser, discussed the permits required for the oil-to-gas work Pierre performed on the Galstons' property, and its failure to secure the required permits. There was also testimony about the need to cap, disable or remove pipes through which the oil had been pumped into the Galstons' home. In addition, there was evidence from which it

could be inferred that the Galstons' were not contributorily negligent. In light of this and other evidence favorable to Griffith, the trial court properly denied Pierre's motion for judgment as a matter of law and allowed the case to go to the jury.

■ Finally, Griffith maintains that the trial court erred by denying its motion for prejudgment interest. The trial court considered and properly denied Griffith's motion. Nevertheless, Griffith presses its argument on appeal that the $850,000 settlement sum was a liquidated debt within the meaning of D.C.Code § 15–108 (2001), and thus, it was entitled to prejudgment interest. Section 15–108 is applicable to "a liquidated debt." In *Schwartz v. Swartz*, 723 A.2d 841 (D.C.1998), we once again declared that: "A liquidated debt is one which at the time it arose, ... was an easily ascertainable sum certain." *Id.* at 843 (quoting *District of Columbia v. Pierce Assocs., Inc.*, 527 A.2d 306, 311 (D.C.1987)) (other citation and internal quotation marks omitted). Here, as the trial court cogently stated in its order denying prejudgment interest: "There was no 'sum certain' until after the jury considered the evidence and rendered its

$600,000 verdict." Hence, Griffith's reliance on *Nationwide Mutual Ins. Co. v. Bradby, Inc.*, Civil Action No. 89–1525 (D.D.C.1990), 1990 U.S. Dist. Lexis 1729 is misplaced. There, the court found "that the damages were indeed liquidated, i.e., became an ascertainable sum-certain at the time Nationwide settled with Howard University." Nationwide settled with Howard in the amount of $116,824.00, brought an indemnification action to recover that sum, and was awarded that exact sum by the court. In contrast, in this case Griffith settled for $850,000 and sought $850,000 from Pierre, but recovered a judgment of only $600,000, one-half of which had to be paid by Pierre. Under the circumstances, the trial court did not err in denying Griffith's motion for prejudgment interest.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*