The GEORGE WASHINGTON
UNIVERSITY, Appellant,

v.

Charles J. BIER, Appellee.

No. 05–CV–775.

District of Columbia Court of Appeals.

Argued June 14, 2006.

Decided April 18, 2008.

Steven A. Steinbach, with whom Craig D. Singer and Ryan T. Scarborough, Washington, DC, were on the brief, for appellant.

Michael T. Wharton, Annapolis, MD, for appellee.

Before KRAMER and FISHER, Associate Judges, and TERRY, Senior Judge.

FISHER, Associate Judge:

Although its post-verdict cross-claim for contribution was rejected as untimely, The George Washington University filed this separate action for contribution based on the same underlying facts and the same legal theories. Because we discern no significant difference between this claim and the one we previously rejected, we affirm the trial court's grant of summary judgment to appellee.

## I. Background

In 1994, Elena Paul sued Dr. Charles Bier and The George Washington University ("GWU"), the employer of another physician, to recover damages for alleged medical malpractice related to their treatment of a blood clot in her left leg.[1] The trial began on July 8, 1996. On July 18, 1996–after she presented her case-in-chief but before the defense began-Ms. Paul settled with GWU for $2,000,000. Although their agreement was captioned "Joint Tortfeasors Settlement Agreement," its contents belie that characterization. The agreement allowed GWU to exit the lawsuit while "maintain[ing] that [it was] not liable on any of the claims and causes of action asserted therein." *See also Paul v. Bier*, 758 A.2d 40, 42 n. 3 (D.C.2000); *id.* at 44–45 & n. 10. Moreover, Ms. Paul and GWU "expressly agreed that nothing contained [in the settlement was] intended to release or shall have the effect of releasing the non-settling defendant to the lawsuit [namely, Dr. Bier]."

At the same time, GWU "desire[d] to ensure that no claims [could be] asserted against it ... by the non-settling defendant to the lawsuit...." Therefore, the agreement provided that, "[i]n the event that [GWU was] held liable for contribution or indemnification in this action or in

---

1. The facts have been set forth in greater detail elsewhere. *See Paul v. Bier*, 758 A.2d 40, 41–42 (D.C.2000). We now recite only enough of them to explain our disposition.

any subsequent action ..., Ms. Paul [would] indemnify [GWU] for said liability...." *See also Paul*, 758 A.2d at 42. The settlement agreement is "silent on the parties' respective rights in the situation that developed here, where it was GWU, not Dr. Bier, making a claim for contribution." *Id.* at 45 n. 11.

After the settlement, the trial resumed against Dr. Bier alone and, on July 29, 1996, the jury returned a verdict awarding Ms. Paul $2,000,000.[2] On September 18, 1996, the trial court granted Dr. Bier's motion for a *pro tanto* credit for the amount of the settlement between Ms. Paul and GWU, thereby reducing the amount of damages paid by Dr. Bier to zero. On October 24, 1996, over three months after its settlement with Ms. Paul, GWU sought leave from the trial court to file a cross-claim against Dr. Bier for contribution in the amount of $1,000,000. When the trial court denied the request as untimely, GWU appealed.

We affirmed, holding that "the trial court did not abuse its discretion in disallowing the cross-claim on the ground that GWU's failure to timely assert its right to contribution was prejudicial to Dr. Bier, the nonsettling defendant." *Paul*, 758 A.2d at 46.[3] "Fairness dictates that all defendants, whether they choose to settle or litigate, file cross-claims for contribution before the verdict in order to give notice to other defendants that they will be required to pay their fair share of damages to a joint tortfeasor in the event that they are found liable." *Id.* at 48. Resolving a con-

solidated appeal by Ms. Paul, we also upheld the trial court's decision to award Dr. Bier pro tanto, rather than pro rata, credit for the amount of the settlement. *Id.* at 42–45. (If the credit had been pro rata only, Dr. Bier would have had to pay $1,000,000 to Ms. Paul, thereby increasing her recovery to $3,000,000. *Id.* at 43.)

On July 16, 1999, three years after the settlement with Ms. Paul and the verdict against Dr. Bier, and in order to toll the statute of limitations, GWU filed this separate action for contribution against Dr. Bier based on the same underlying facts asserted in its rejected cross-claim. The trial court stayed the case at the request of the parties pending the outcome in *Paul*. After this court decided *Paul*, both parties moved for summary judgment and on April 3, 2002, the trial court lifted the stay for the limited purpose of adjudicating the motions.

The trial court granted Dr. Bier's motion for summary judgment while denying GWU's. Characterizing the filing of the separate action seeking contribution as an "effort to circumvent the Court of Appeals' decision in *Paul*," the court determined that GWU could not establish that it and Dr. Bier were joint tortfeasors. There was no stipulation to that effect by all parties. Furthermore, there had been no adjudication of GWU's status in the original proceeding, and the trial court stated that it could not "formally adjudicate the parties as joint tortfeasors." The trial court also rejected GWU's alternative claim for indemnification. It looked to the

2. We previously rejected Ms. Paul's claim "that the jury verdict compensated for damages solely attributable to Dr. Bier...." *Paul*, 758 A.2d at 43. In other words, the record indicated that the verdict was "intended as full compensation for her injuries...." *Id.*

3. In so holding, this court assumed for the sake of argument that GWU was a joint tortfeasor with a right to contribution. *Paul*, 758 A.2d at 46. We did not answer the questions of whether a settling defendant has a right to contribution and, if it does, what procedural mechanisms may be used for establishing the predicate joint tortfeasor liability. *Id.* at 45–46.

RESTATEMENT OF RESTITUTION § 71(2) (1937) and found no debtor/creditor or suretyship relationships upon which the claim for indemnification could be based. GWU appeals the rulings rejecting both of its claims.

## II. Standard of Review

In reviewing a trial court's grant of summary judgment, we perform an independent evaluation of the record, employing the same standards as the trial court when it initially considers the motion. *EastBanc, Inc. v. Georgetown Park Associates II, L.P.*, 940 A.2d 996, 1001 (D.C.2008). "We therefore must determine whether the party awarded summary judgment demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. We view the record in the light most favorable to the non-moving party." *National Association of Postmasters of the United States v. Hyatt Regency Washington*, 894 A.2d 471, 474 (D.C.2006) (internal quotation marks and citations omitted).

## III. The Equitable Remedy of Contribution

Contribution is based on "the principle that a party who discharges a liability shared with another should not bear the sole obligation for payment." *Hall v. George A. Fuller Co.*, 621 A.2d 848, 850 n. 3 (D.C.1993). In the District of Columbia, contribution is an equitable remedy, *see, e.g., id.; Paul*, 758 A.2d at 49 n. 16, that "has been established by case precedent rather than by statute." *District of Columbia v. Washington Hospital Center*, 722 A.2d 332, 336 (D.C.1998) (en banc). "Under these precedents, it is now well settled that there is a right of equal contribution among joint tortfeasors." *Id.*

As we explained in *Paul*, the "right of contribution does not arise 'without a finding that the party seeking contribution is a joint tortfeasor along with the party from whom contribution is sought.'" 758 A.2d at 46 (citing *Hall*, 621 A.2d at 850). Liability as a joint tortfeasor may be either "judicially established," *Drs. Groover, Christie & Merritt, P.C. v. Burke*, 917 A.2d 1110, 1112 n. 1 (D.C.2007) (internal quotation marks and citation omitted), or conceded by a stipulation of "all parties." *Berg v. Footer*, 673 A.2d 1244, 1251 (D.C.1996). We previously determined that, if GWU had a right to contribution at all, it "would have become enforceable ... when it agreed to pay Paul $2,000,000[,] ... while the litigation against Dr. Bier was still in progress...." *Paul*, 758 A.2d at 47.

In light of its mid-trial respite from the litigation, GWU does not claim that its liability as a joint tortfeasor was actually adjudicated, nor does it assert that there was a stipulation of liability "by all parties." Nevertheless, GWU now insists that it is a joint tortfeasor. This belated, self-serving, and unilateral assertion of responsibility does not establish the joint liability necessary to trigger a right of contribution. *Cf. Washington v. Washington Hospital Center*, 579 A.2d 177, 189 (D.C.1990) ("we decline to hold that allegations in pleadings can replace findings of fact for purposes of applying a credit against the verdict intended to substitute for the non-settling defendant's contribution claim"). Even if Ms. Paul is bound by the settlement agreement to support GWU's current claim that it is liable, that would not amount to a stipulation of "all parties." *Cf. Berg*, 673 A.2d at 1251 n. 13 (distinguishing "a stipulation by only the plaintiff and a settling defendant").

Perhaps GWU could have asked to remain in the case after the settlement so that joint liability could be established by the jury's verdict or by the court. *See,*

e.g., *Paul*, 758 A.2d at 45–46 (noting that if a settling defendant has a right to contribution from a non-settling defendant, it "must have available a procedural mechanism to establish the predicate joint tortfeasor liability"). *Cf. Rose v. Associated Anesthesiologists*, 163 U.S.App. D.C. 246, 247, 501 F.2d 806, 807 (1974) (while the jury trial proceeded against the non-settling hospital, "the court, without a jury, tried the cross-claims of the settling defendants against the Hospital for indemnification or contribution"); *but see id.* at 250, 501 F.2d at 810 (settling defendants "cannot equitably insist on a continuing involvement in the litigation for the purpose of invoking contribution to lessen their payment when they have no exposure to an increase in payment if contribution should be sought from them").[4] In addition, GWU might have negotiated a settlement that extinguished the liability of all defendants, but it did not. Indeed, as noted above, it agreed with Ms. Paul "that nothing contained [in the settlement agreement was] intended to release or shall have the effect of releasing [Dr. Bier]." We decline to treat anything that has happened thus far as establishing that GWU and Dr. Bier are joint tortfeasors.

GWU argues in the alternative that it should be allowed to try the malpractice case anew, seeking this time to establish that it and Dr. Bier are joint tortfeasors.[5] It urges this court to hold that settling defendants are entitled to seek contribution from non-settling defendants, even when their liability has not been established and the stipulation has not been agreed to by all the parties. However, we continue, as we did in *Paul*, to reserve the issue of whether (and, if so, under what circumstances) a settling defendant has a right to contribution. *See Paul*, 758 A.2d at 46; *see also District of Columbia v. Washington Hospital Center*, 722 A.2d at 342–43 & nn. 13–15; *Berg*, 673 A.2d at 1253–54 n. 17.[6] For the purposes of this opinion, we assume that a settling defendant does have that right, and that there must be some available "procedural mechanism to establish the predicate joint tortfeasor liability, even though as a result of settlement, it is no longer party to the lawsuit." *Paul*, 758 A.2d at 46.

### IV. Is It Still Too Late?

■ Although its cross-claim was barred as untimely, GWU argues that it is entitled to seek contribution or indemnification in this new lawsuit filed three years later. We reject this argument. As discussed above, the right of contribution is an equitable remedy. Accordingly, the present action is properly evaluated in light of the surrounding equitable consid-

---

4. We cite *Rose* only by way of illustration. That decision is not binding upon us, *see M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971), and we do not adopt its reasoning here.

5. It suggests that this trial might be streamlined by relying, at least in part, on transcripts from the original trial.

6. Without mentioning our reticence to resolve this controversy, we have held "that a settling tortfeasor who brings a contribution action against a non-settling tortfeasor in the District of Columbia has the burden of establishing the liability of the non-settling tortfeasor, and the reasonableness of its settlement with the injured person(s)." *M. Pierre Equipment Co. v. Griffith Consumers Co.*, 831 A.2d 1036, 1039 (D.C.2003). In that case both Griffith and Pierre had caused damage to homeowners named Galston. "Griffith negotiated a settlement with the Galstons in the amount of $850,000." *Id.* at 1038. "The Galstons then assigned their rights against Pierre to Griffith, and Griffith filed a lawsuit against Pierre to recover one-half of the $850,000 settlement sum." *Id.* The jury found that $600,000 would have been a reasonable settlement, and Griffith was awarded the *pro rata* amount of $300,000 against Pierre. *Id.* at 1037.

erations. *See Paul,* 758 A.2d at 47–48 (applying equitable considerations in evaluating timeliness of the cross-claim); *see also id.* at 53 (Schwelb, J., dissenting) ("This case is somewhat unusual in that the issues presented are entirely equitable in nature. There is no statute or rule of court dictating the result."); RESTATEMENT (SECOND) OF TORTS § 886A, cmt. c (1977) ("The 'right of contribution' stated [in § 886A] is not intended to be an absolute right in all cases; and in any case in which contribution would be inequitable it is still intended that a court will deny it.").

We predicted in *Paul* that, "if GWU's late cross-claim was properly denied, a separate complaint for contribution also would be subject to a defense of laches or estoppel." *Id.* at 46 n. 13.[7] However, we agree with GWU that the issue was not before the court at that time, and this comment is technically dictum. Similarly, the doctrines of *res judicata,* collateral estoppel, and law of the case, strictly construed, may not apply here. Nevertheless, GWU's current claim for contribution looks much the same as the one it presented in 1996. Some things have changed, or perhaps could now be altered, but GWU is essentially asking us to revisit questions that we addressed in *Paul.*

The core of our holding in *Paul* was that Dr. Bier would be prejudiced by the belated presentation of GWU's claim for contribution. For example, neither Ms. Paul nor GWU sought to have GWU's liability adjudicated by the same jury that found Dr. Bier liable, *Paul,* 758 A.2d at 43 n. 5, 44 & 49 n. 16, nor was that jury asked to

determine how much of the harm was solely attributable to Dr. Bier. *Id.* at 43 n. 5. The GWU/Paul settlement was in part *intended* to weaken Dr. Bier's position in the litigation-it reflected a "strategic choice" by Ms. Paul that took into account "the uncertainty of recovery and . . . the need for a settlement to help strengthen [her] litigation prospects against a nonsettler." *Id.* at 44 n. 8 (internal quotation marks and citation omitted). With GWU removed from the lawsuit but not yet asserting a right to contribution, Dr. Bier defended against the only extant claim. However, "[t]he manner of defense and trial strategy may be different . . . in light of a claim for contribution by an alleged joint tortfeasor." *Id.* at 48. We explained that

[a]lthough there can be no doubt that it was in Dr. Bier's interest even prior to GWU's settlement to separate [his] responsibility from that of GWU if it could have reduced his potential liability to Paul as a result, Dr. Bier may have considered that the most effective defense with the jury was one that denied all liability on his part and attempted to minimize the injury alleged by Paul.

*Id.* Even though GWU now claims that it is "preposterous" to believe that Dr. Bier would have altered his trial strategy in the face of a timely assertion of the contribution claim, we have already held to the contrary. We said specifically that "[h]ad Dr. Bier been put on notice of GWU's intent to claim for contribution, he would have had an incentive to build a case during trial that separated his liability from that of GWU if he knew that joint tortfea-

7. GWU argues that Dr. Bier should be estopped from asserting a defense of untimeliness in this case because of the manner in which he opposed rehearing *en banc* in *Paul.* It claims that "[t]he unmistakable thrust of Dr. Bier's argument was that the Court of Appeals need not grant *en banc* review because the parties were already involved in

another case—this case—that 'directly' presented the contribution question." This argument would have more force if the outcome of this case turned on whether a settling defendant has a right to contribution from a nonsettling defendant. However, we conclude that, in these circumstances, GWU's claim is precluded even if that right in theory exists.

sor liability would be a central feature of his responsibility to GWU." *Id.* at 48 (citing *Washington v. Washington Hospital Center,* 579 A.2d at 188 (plaintiff might have litigated differently had there been a request for *pro rata* credit)).

Perhaps some of this prejudice could be mitigated or extinguished by starting afresh and conducting a new trial in which Dr. Bier would defend himself against GWU's claim for contribution unhampered by any strategic decisions he made years ago. But such an approach would prejudice Dr. Bier in different ways. He has an interest in repose, which would be affronted by having to retry the issue of negligence many years after he first defended against it. In the new trial, moreover, Dr. Bier might find himself in the awkward position of defending against a plaintiff (GWU) determined to prove its own liability. Most importantly, perhaps, allowing the case to be tried again under these circumstances would needlessly consume judicial resources. *See* DAN B. DOBBS, 1 LAW OF REMEDIES § 2.4(1) (2d ed.1993) (in balancing equitable hardships, court may consider public interests and those of third persons).

 Notwithstanding these clear indications of prejudice, GWU argues that the equities now balance in its favor. In weighing them, we first reiterate what we stated in *Paul*—that GWU had no reason "based in law, to delay asserting its claim [for] contribution." 758 A.2d at 47. We determined then that Dr. Bier would be prejudiced if he had to defend against the untimely claim for contribution. "Fairness dictate[d] that all defendants, whether they choose to settle or litigate, file cross-claims for contribution before the verdict...." *Id.* at 48.

We also commented that although "GWU is not an adjudicated tortfeasor, we have no basis to assume that it is inequitable for it to have paid $2,000,000 to [Ms.] Paul." *Id.* at 49 n. 16. Indeed, by settling for $2,000,000, GWU signaled that it feared a much larger verdict than that ultimately returned. It may, in fact, have anticipated that the verdict would exceed $4,000,000, because it structured the settlement with Ms. Paul to protect itself from a potential claim for contribution by Dr. Bier. *Id.* at 45 n. 11. GWU could have enhanced the attractiveness of its own claim for contribution by reaching a settlement that released all the defendants, but it did not do so, presumably because that would have cost more money.

 To be sure, Dr. Bier has been adjudicated a tortfeasor and, at least on the surface, it hardly seems equitable that he will effectively escape financial liability for his malpractice. Nevertheless, we have already confronted that question in *Paul.* Moreover, it appears that however we resolve the present controversy, certain elements of unfairness will persist. If we allow GWU to pursue its claim for contribution (and if it succeeds), that will effectively overrule our previous decision in *Paul* upholding the trial court's award of a *pro tanto* credit to Dr. Bier. Contrary to our previous holding, Dr. Bier would have to pay $1,000,000, but now that sum would go to GWU rather than to Ms. Paul. That outcome would create a different type of unfairness. Moreover, it is difficult to explain how a claim for contribution that was rejected initially as untimely should now be adjudicated many years later.[8] In sum,

8. We do not doubt that this independent action was filed within the appropriate statute of limitations. D.C.Code § 12–301(8) (2001). However, as we have said, contribution is an equitable remedy, *District of Columbia v. Washington Hospital Center,* 722 A.2d 332, 336 (D.C.1998) (en banc), and "[t]raditionally and for good reasons" the statute of limita-

we find no reason in law or in equity to alter the analysis we followed in *Paul* simply because GWU now asserts an "independent" action for contribution.[9]

## V. What About Indemnification?

GWU maintains that if it is not a joint tortfeasor, then it must be entitled to indemnification. Although the right to indemnification surely is not as limited as the trial court supposed, *see generally Caglioti v. District Hospital Partners, LP,* 933 A.2d 800, 807–08 (D.C.2007); *R. & G. Orthopedic Appliances & Prosthetics, Inc. v. Curtin,* 596 A.2d 530, 544–45 (D.C.1991), indemnification, like contribution, is an equitable remedy (when it does not arise from contract), *R. & G. Orthopedic Appliances,* 596 A.2d at 545. The equities would not change if a different label were attached to GWU's present claim.

The judgment of the Superior Court is hereby

*Affirmed.*

tions does not control the timeliness of equitable claims. *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946). "A suit in equity may fail though 'not barred by the act of limitations....'" *Id.* (quoting *McKnight v. Taylor,* 42 U.S. [1 How.] 161, 168, 11 L.Ed. 86 (1843)).

9. It is, of course, possible to seek contribution in a "separate" or "independent" action, *see, e.g., M. Pierre Equipment Co., supra* note 5, 831 A.2d 1036; *Taylor v. Tellez,* 610 A.2d 252, 253 (D.C.1992) (after being sued by Whitmore, Taylor brought third-party action for indemnification against Tellez and his company; Taylor then settled with Whitmore and continued the suit against Tellez, adding a claim for contribution); *Early Settlers Insurance Co. v. Schweid,* 221 A.2d 920, 921–22 (D.C.1966) (after settling with injured party, motorist's insurance company filed suit for indemnification or contribution against another driver), and we do not suggest the contrary. However, GWU cannot erase the past, and the equities surrounding this action are dominated by what has happened before, including that GWU and Dr. Bier were co-defendants joined for trial, that GWU settled in the middle of trial, and that it allowed the case to proceed to verdict before attempting to file its cross-claim against Dr. Bier.